# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 1, 2018 Session

## STATE OF TENNESSEE ON RELATION OF V. CALVIN HOWELL ET AL. v. JIMMY FARRIS ET AL.

### Appeal from the Chancery Court for Hardeman County
### No. 17784    Martha Brasfield, Chancellor

_____

### No. W2017-00438-COA-R3-CV

_____

This case arose as a result of a local building inspector's refusal to issue building permits to the owner/developer of three commercial properties because the owner/developer did not have a licensed general contractor overseeing construction. Subsequently, without submitting completed applications for the building permits or paying the required permit fees, the owner/developer appeared before the Bolivar city council to appeal the denials of the building permits. Relying on the recommendation of the city attorney, the city council determined that because the owner/developer had not filed written building permit applications or paid building permit fees, an appeal was not appropriate and refused to take any action. The owner/developer then filed a complaint for a writ of certiorari and other relief in the Chancery Court. Following the filing of the lawsuit, the owner completed the applications, paid the permit fees, and the building permits were issued. The owner/developer was later granted permission to amend his complaint to allege an inverse condemnation claim based on a regulatory taking. The defendants subsequently moved for summary judgment. The Chancery Court ultimately granted defendants summary judgment on all of the owner/developer's initial claims. The defendants later filed a motion to dismiss as to the owner/developer's claim for inverse condemnation. The motion to dismiss was also granted by the Chancery Court. The owner/developer appeals. For the reasons stated herein, the decision of the Chancery Court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Charles M. Purcell and Christopher C. Hayden, Jackson, Tennessee, for the appellants, State of Tennessee - Civil, and Virgil Calvin Howell.

Michael R. Hill, Milan, Tennessee, for the appellee, Jimmy Farris.

John D. Burleson and Matthew R. Courtner, Jackson , Tennessee, for the appellees, Shelia Dellinger, City of Bolivar, Tennessee, Barrett Stevens, Tracy Byrum, James Futrell, Teresa Golden, Randy Hill, Todd Lowe, Larry Allen McKinnie, Willie McKinnie, and David Rhea.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

V. Calvin Howell ("Appellant" or "Mr. Howell"), an owner/developer of real estate, appeals the dismissal of his claims which arose out of his attempts to obtain building permits for three of his commercial properties in Bolivar, Tennessee.

On March 13, 2013, Mr. Howell filed a verified "Complaint for Injunctive Relief, Writ of Certiorari, Declaratory Judgment, Restraint of Improper Alienation of Property and Damages" in the Chancery Court against Jimmy Farris, individually and in his capacity as building and code enforcement officer; Sheila Dellinger in her official capacity as city administrator (the "City Administrator"); the City of Bolivar, a municipal corporation of the State of Tennessee in its own capacity (the "City"), and by and through Barrett Stevens in his official capacity as mayor of Bolivar (the "Mayor"); and the following members of the City Council in their official capacity: Tracy Byrum, James Futrell, Teresa Golden, Randy Hill, Todd Lowe, Larry Allen McKinnie, Willie McKinnie, and David Rhea (the "City Council").[1]

According to the complaint, the events giving rise to Mr. Howell's suit began on or about June 6, 2011, when Mr. Howell approached Mr. Farris and verbally requested that Mr. Farris issue building permits for the improvement and renovation of structures located on property Mr. Howell owns at 105 (the "Hotel") and 109 West Market Street (the "Restaurant") in Bolivar, Tennessee. Mr. Howell alleged that Mr. Farris told him that he was denying the permits because Mr. Howell was not a licensed contractor pursuant to Tennessee Code Annotated § 62-6-101 *et seq.* (the "Contractor Licensing Act"), and Mr. Howell had not hired a licensed contractor to oversee the construction sites.[2] It is undisputed that Mr. Howell is not a licensed contractor, and that he had

---

[1] Jimmy Farris, the City Administrator, the City, the Mayor, and the City Council together are referred to as "Appellees" throughout this opinion.

[2] Tennessee Code Annotated Section 62-6-101 *et seq.* prohibits anyone from engaging in "contracting" without being a licensed contractor. "'Contractor' means any person . . . that undertakes to . . . construct, supervise, superintend, oversee, schedule, direct, or in any manner assume charge of the construction, alteration, repair . . . for any building . . . or any other construction undertaking for which the total cost is twenty-five thousand dollars ($25,000) or more[.]" Tenn. Code Ann. § 62-6-102(4)(A)(i).

already begun construction on these projects before he requested the building permits. Mr. Howell further alleged that on or about August 10, 2011, he requested a building permit for a third project located on Pecan Grove Drive (the "Apartment Building") and that Mr. Farris also denied this request, again citing the Contractor Licensing Act. Mr. Howell averred that he "advised [Mr. Farris] that as owner of the three properties he had no factual or legal obligation under [the Contractor Licensing Act] to either obtain a contractor's license or to hire a licensed contractor to oversee the construction projects." Despite Mr. Howell's statements, Mr. Farris continued to refuse to issue the permits.

Following Mr. Farris' denials, Mr. Howell alleged that he approached the Mayor to discuss the situation. According to Mr. Howell's complaint, the Mayor agreed with Mr. Howell that as the owner of the properties he was exempt from the Contractor Licensing Act and that Mr. Farris should issue the permits to Mr. Howell. Despite whatever discussions the Mayor may have had with Mr. Farris, Mr. Farris continued to refuse to issue the permits.

Although Mr. Howell did not have the requisite building permits, he continued working on the three projects. On December 6, 2011, the District Attorney General contacted Mr. Howell ordering him to cease all construction until Mr. Howell was in compliance with the Contractor Licensing Act and other applicable regulations. Evidently, despite the warning, Mr. Howell continued construction, and on May 7, 2012, the Hardeman County Grand Jury returned an indictment charging Mr. Howell with three counts of "contracting" without a license in violation of the Contractor Licensing Act.[3] On May 28, 2012, the judge presiding over Mr. Howell's criminal case enjoined Mr. Howell from continuing construction. However, on November 15, 2012, the judge in the criminal case granted Mr. Howell's motion to dismiss the indictments, lifted the injunction, and concluded that the Contractor Licensing Act did not apply to Mr. Howell because he was not engaged in "contracting."[4] The State appealed, and on February 13, 2014, the Court of Criminal Appeals reversed the circuit court's dismissal of the indictments stating, "the plain language of the Contractor Licensing Act provides that the activities undertaken by Appellant must be done by a licensed contractor." *State v. Howell*, No. W2012-0285-CCA-R3-CD, 2014 WL 586003, at *6 (Tenn. Crim. App. Feb. 13, 2014).

---

[3] Mr. Howell was indicted for "contracting" as defined by Tennessee Code Annotated Section 62-6-102(2), without a license as required by Tennessee Code Annotated Section 62-6-102(3), in violation of Tennessee Code Annotated Section 62-6-103 and Section 62-6-120.

[4] The Circuit Court Judge stated, "Upon review of [the Contractor Licensing Act] as well as of the reasonable meaning of this entire chapter, this Court concludes that the law does not contemplate that an owner of a property engages in the business of contracting when he allows others to work on his property."

While the appeal of the dismissal of the indictments against Mr. Howell was pending, on January 8, 2013, Mr. Howell appeared with his attorney before the Bolivar City Council because Mr. Farris continued to refuse to issue the building permits.[5] Because of the ongoing criminal proceedings, the City Council resolved to consult with the City Attorney before proceeding. At the following City Council meeting on February 12, 2013, Mr. Howell once again appeared with his attorney. The minutes from the meeting indicate that Mr. Howell was directed to file three building permit applications, pay the requisite permitting fees, and be formally denied before the City Council would proceed.

On March 12, 2013, the City Council held its monthly session, but Mr. Howell and his attorney did not appear. The minutes from the meeting again indicate that Mr. Howell had continued to fail to submit the permit applications or pay the permitting fees.

Mr. Howell initiated this litigation on March 13, 2013 with a properly verified petition. Among other relief,[6] Mr. Howell sought the issuance of a statutory writ of certiorari to review the actions of the City Council. In the alternative, Mr. Howell sought review through the issuance of a common law writ of certiorari. Mr. Howell also sought liquidated damages based upon the delays allegedly caused by the City's actions. However, for reasons unknown, the Chancery Court did not order the City to send up the record for review until nearly two years later.[7]

On April 30, 2013, Mr. Farris answered, and averred that he was not required to issue the building permits to Mr. Howell because Mr. Howell was not in compliance with the Contractor Licensing Act. Mr. Farris also denied that Mr. Howell ever approached him requesting the permits, submitted permit applications, paid the permitting fees, or informed the City of the cost of the projects so that permitting fees could be calculated. On May 28, 2013, the City Council, City Administrator, and Mayor answered Mr. Howell's complaint, averring that Mr. Howell had failed to state a claim under Tennessee Rule of Civil Procedure 12.02(6).

While the case was pending, in July 2013, Mr. Howell filed the required permit applications, paid the requisite fees, and the three building permits were approved.[8]

---

[5] The City Council serves as the board of zoning appeals in Bolivar. *See* Bolivar City Code No. 12-102(4).

[6] In total, Mr. Howell's complaint contained five "counts," labeled as follows: (1) restraint of improper alienations of property and removal of officer; (2) writ of certiorari; (3) declaratory judgment; (4) compensatory damages; (5) injunctive relief.

[7] This occurred on February 25, 2015, when the Chancery Court entered its initial order on Appellees' motion for summary judgment in which it found the issue moot.

[8] Due to a clerical error, the permits were not officially issued until February 2015. However, the Chancery Court found this inconsequential, concluding "[t]he record reveals that the parties have acted as if a building permit had been issued, and when it was discovered that a permit had not been issued but

- 4 -

On May 1, 2014, Mr. Farris, in his official capacity, the City Administrator, the City Council, and the Mayor filed a motion for summary judgment, a statement of undisputed material facts, and a supporting memorandum that averred, *inter alia*, that Mr. Howell's claims were moot because the permits were approved in July 2013. Also in support of the motion for summary judgment, the Appellees submitted a portion of Mr. Howell's deposition testimony, during which Mr. Howell admitted that he did not pay the permit fees or submit formal permit applications until July of 2013, and that when he eventually did so, the permits were approved. However, Mr. Howell continued to oppose Appellees' motion for summary judgment, and both sides submitted additional pleadings in support of their positions. On October 17, 2014, Mr. Howell sought permission from the Chancery Court to amend his complaint to assert a claim for inverse condemnation based on a regulatory taking.[9] On December 10, 2014, the Chancery Court held a hearing on Appellee's motion for summary judgment and entered an order granting Mr. Howell's motion to amend his complaint to add an additional claim for inverse condemnation.[10]

On February 25, 2015, the Chancery Court granted Appellees partial summary judgment. The court's initial summary judgment order stated that Mr. Howell was entitled to review under both a common law writ of certiorari and a statutory writ of certiorari, and for the first time ordered the City Council to prepare the record. Furthermore, the order stated that Mr. Howell could seek compensatory damages in this proceeding because "[t]he attorneys have agreed that these damages would be appropriate under the statutory writ of certiorari under Tenn. Code Ann. § 27-8-102(2)." However, in this same order, the Chancery Court dismissed Mr. Howell's claims as moot stating, "[t]he motion for summary judgment is affirmed to the extent that it is no longer necessary for this Court to order the City to issue the building permits or to remove [Mr. Farris] from office because the building permits have been issued and [Mr. Farris] is no longer in office."

On March 3, 2015, Mr. Howell filed motions to reconsider and to strike. As a basis for the motions, Mr. Howell asserted that Appellees' attorney had contacted his attorney on February 25, 2015, to inform him that although both parties believed the permits had been issued in July 2013, the permits had only recently been issued due to a clerical error. However, the attorneys agreed at oral argument that the parties proceeded as if the permits had previously been formally issued since they were approved in July 2013.

---

only approved, a building permit was issued."

[9] As grounds for the motion to amend the complaint, Mr. Howell asserted that the Supreme Court had recently recognized a cause of action of inverse condemnation through regulation. *See Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 242 (Tenn. 2014).

[10]At the December 10, 2014 hearing on the Appellees' motion for summary judgment, Appellees' attorneys consented to the amendment of the complaint.

On March 16, 2015, Appellees responded in opposition to Mr. Howell's motion to strike, and on March 27, 2015, Appellees filed a motion to revise the court's order granting Appellees partial summary judgment. In the motion to revise, Appellees urged the Chancery Court to amend its previous ruling by holding that the common law writ was the exclusive and appropriate mechanism through which Mr. Howell could seek review of the City Council's actions. Moreover, Appellees argued that Mr. Howell's suit should be dismissed as moot because the permits had been issued. Appellees' attorney also averred that he never agreed that compensatory damages would be an available remedy to Mr. Howell in this proceeding even if the Chancery Court concluded that the statutory writ was the appropriate vehicle for review of the City Council's actions.[11]

Also on March 27, 2015, Mr. Howell filed his "First Amended Complaint for Injunctive Relief, Writ of Certiorari, Declaratory Judgment, Restraint of Improper Alienations of Property, Inverse Condemnation, and Damages," adding a regulatory taking claim pursuant to Article 1, Section 21 of the Tennessee Constitution. On December 3, 2015, Appellees moved to dismiss Mr. Howell's regulatory taking claim. On July 7, 2016, Mr. Howell filed a memorandum of law in opposition to Appellees' motion to dismiss.

On January 11, 2017, the Chancery Court entered two orders. First, it entered an order revising its earlier order on Appellees' motion for summary judgment. In this order, the court dismissed all of Mr. Howell's claims, except for his regulatory taking claim. The court found that the common law writ was the appropriate vehicle for review of the City Council's actions, compensatory damages were not an available remedy, and that the issuance of the permits rendered Mr. Howell's claims moot. The court also entered a second order granting Appellees' motion to dismiss Mr. Howell's regulatory taking claim, concluding that Mr. Farris' refusal to issue the permits "was legally appropriate in light of the [Tennessee Court of Criminal Appeals'] ruling in *State v. Howell*, 2014 WL 586003, at *5 (Tenn. Ct. Crim. App. Feb. 13, 2014)."

On January 26, 2017, the parties filed a joint motion to correct inadvertent clerical errors contained in both orders of January 11, 2017. On February 6, 2017, the Chancery Court entered two revised orders correcting the clerical errors.[12] Mr. Howell timely appealed.[13]

---

[11] In support of the motion, Appellees' attorney attached a record of the transcript from the proceedings in which the Chancery Court received the impression that it was Appellees' position that compensatory damages were an available remedy if the court should conclude the statutory writ was appropriate. The transcript reveals that the attorney clearly did not agree that compensatory damages would be available.

[12] Mr. Howell has not appealed the dismissal of his Tennessee Code Annotated Section 29-35-101 *et seq.* claim (forfeiture of office), his declaratory judgment claims, or his claims for injunctive relief.

[13] Mr. Howell also filed a suit against Appellees in federal court. Mr. Howell brought suit pursuant to 42 U.S.C. § 1983, alleging the City's policies, customs, and procedures caused violations of

## ISSUES PRESENTED

Mr. Howell presents the following issues for our review:

(1) Whether the trial court erred in granting the Defendants' motion to revise the trial court's denial of the defendants' motion for summary judgment on the appropriate method of judicial review as to the Defendants' denial of the plaintiff's requested building permits.

(2) Whether the trial court erred in granting the defendants' motion to dismiss the plaintiffs' regulatory taking claim in reliance upon the Tennessee Court of Criminal Appeals' ruling in *State v. Howell*, 2014 WL 586003, at *5 (Tenn. Crim. App. Feb. 13, 2014).

Appellees present the following issues for our review:

(3) Whether the trial court correctly dismissed [Mr.] Howell's writ of certiorari claim for monetary damages.

(4) Whether the trial court correctly dismissed Howell's inverse condemnation claim because he failed to state a claim.

Mr. Farris, in his individual capacity, presents the following issue for our review:

(5) Whether the Plaintiff has any claims pending against the Defendant, Jimmy Farris, in his individual capacity.[14]

## STANDARD OF REVIEW

Mr. Howell appeals the Chancery Court's decisions to grant Appellees' motion for summary judgment on all claims in his original complaint as moot and to grant Appellees' motion to dismiss Mr. Howell's regulatory taking claim. The Tennessee Supreme Court has described the standard of review applicable in an appeal from a grant of summary judgment as follows:

---

his First Amendment rights, violations under the Fourteenth Amendment's substantive due process clause and its equal protection clause, and violations of the Tennessee Open Meetings Act, Tennessee Code Annotated Section 8-4-101. *See Howell v. Farris*, No. 15-01027-JDB-egb, 2015 WL 6037808, at *1 (W.D. Tenn. Oct. 15, 2015). However, these claims were subsequently dismissed based upon the statute of limitations. *Id.*

[14] At oral argument, Mr. Howell conceded that he has not appealed the dismissal of the claims against Mr. Farris in his individual capacity.

We review a grant of summary judgment *de novo*, with no presumption of correctness in the trial court's decision. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250.

*McFarland v. Pemberton*, 530 S.W.3d 76, 85–86 (Tenn. 2017).

A motion to dismiss requires a court to determine if the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); *See Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 237 (Tenn. Ct. App. 2014). A motion based upon Tennessee Rule of Civil Procedure 12.02(6) challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "A defendant filing a motion to dismiss 'admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Phillips*, 442 S.W.3d at 237 (quoting *Webb*, 346 S.W.3d at 426)).

When adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (citation omitted). A Rule 12.02(6) motion may only be granted when it appears that "the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Webb*, 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). We review a lower court's decision on a motion to dismiss *de novo* without any presumption of correctness. *Id.*

### DISCUSSION

Mr. Howell contends that the Chancery Court erred in concluding that the statutory writ of certiorari was not available to him, and in granting summary judgment on his claims, with the exception of his regulatory taking claim, as moot. Mr. Howell also avers that the Chancery Court erred in granting Appellees' motion to dismiss his remaining regulatory taking claim. Although we have not arrived at our decision based upon the same reasoning as the Chancery Court, we affirm its judgment in its entirety. *See In re Conservatorship of Stratton*, No. E2012-01655-COA-R3-CV, 2013 WL 3961175, at *5 (Tenn. Ct. App. July 31, 2013) ("An appellate court can affirm the judgment of the Chancery Court even though the appellate tribunal's rationale for doing so is different from that of the Chancery Court.").

# I. COMMON LAW WRIT OF CERTIORARI VS. STATUTORY WRIT OF CERTIORARI

At the outset, we address Mr. Howell's contention that the Chancery Court erred in concluding that the common law writ of certiorari was the proper method of judicial review in this case. Mr. Howell contends that he was entitled to review under the preferential standard afforded by the statutory writ of certiorari because the City Council performed an essentially judicial function, and he contends that the City Council "in its inaction of providing [Mr. Howell] with a decision from which he could appeal, finally determined his rights by in effect denying the issuance of the permits to [Mr. Howell] along with his ability to appeal the refusal of the same." Appellees defend the Chancery Court's decision, contending that the City's actions were administrative, and Mr. Howell did have a mechanism to seek review of the City Council's actions by seeking a common law writ of certiorari.

Before addressing Mr. Howell's contentions, we first turn to explain the mechanics and applicability of the common law writ of certiorari versus that of the statutory writ of certiorari. "A [w]rit of [c]ertiorari is an order from a superior court to an inferior [tribunal] to send up the record for review." *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001). "In Tennessee, there are two types of writs of certiorari: (1) the common law writ, codified at [Tennessee Code Annotated Section] 27-8-101, and (2) the statutory writ, codified at [Tennessee Code Annotated Section 27-8-102]." *See Admin. Res., Inc., v. Tenn. Dep't of Commerce*, No. M2010-01199-COA-R3-CV, 2011 WL 2176387, at *5 (Tenn. Ct. App. June 2, 2011).

"The basic purpose of the common law writ of certiorari is to curb 'illegal' actions by the inferior tribunal, while the basic purpose of the statutory writ is to correct mistakes and errors of inferior tribunals." *See* Lawrence A. Pivnick, *Tenn. Cir. Ct. Prac.* §3:13 (2017). The common law writ of certiorari is available "where an inferior tribunal, board, or officer, exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." Tenn. Code Ann. § 27-8-101. A common law writ of certiorari is not available as a matter of right, and the petition for a writ is addressed to the Chancery Court's discretion. *Heyne v. Metro. Nashville Bd. of Public Educ.*, 380 S.W.3d 715, 729–30 (Tenn. 2012) (citations omitted). When a court issues a common law writ of certiorari, the record of the inferior tribunal is brought before the court to determine whether the inferior tribunal proceeded according to the applicable law. *See Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003). We have described the mechanics of the common law writ of certiorari as follows:

> The issuance by the trial court of a writ of certiorari is not an adjudication of anything. It is neither a victory nor a defeat for the competing parties. It is simply a command by the trial court to the inferior tribunal or

administrative agency to send the record made before the agency in the proceeding to the court for review of that record. Then the trial court upon review of the record made before the administrative tribunal will enter a judgment of either quashal or affirmance.

*Id.* (citing *Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870, 872 (1916)). "The primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the Chancery Court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue *de novo* as the initial decision maker." *State ex rel. Moore & Assoc's, Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005). The common law writ of certiorari does not allow a reviewing court to evaluate the intrinsic correctness of the lower tribunal's decision. *Id.* at 377 (citing *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981)).

On the other hand, "[t]he statutory writ of certiorari is authorized, in lieu of appeal, to correct errors of fact and law committed by an inferior tribunal," and the Chancery Court may conduct a trial *de novo*. *See Boyce v. Williams*, 389 S.W.2d 272, 276 (Tenn. 1965). Tennessee Code Annotated Section 27-8-102 provides that the statutory writ of certiorari is available in five instances: "(1) [o]n suggestion of diminution; (2) [w]here no appeal is given; (3) [a]s a substitute for appeal;[15] (4) [i]nstead of audita querela;[16] or (5) [i]nstead of a writ of error." In the absence of a statute expressly granting review under Tennessee Code Annotated Section 27-8-102,[17] the statutory writ is only available to review a lower tribunal's decision when the following three requirements are met: "(1) the order of the administrative body of which review is sought is one for which no judicial review is provided; (2) the function performed by the lower tribunal is essentially judicial in nature; and (3) the order for which review is

---

[15] The statutory writ of certiorari may only be used as a substitute for appeal, when a party has been denied an appeal through no fault of their own. *See Gallatin Hous. Auth. v. Pelt*, 532 S.W.3d 760, 768 (Tenn. Ct. App. 2017) ("Unless the petitioner has been deprived of his appeal by inevitable accident, by the wrongful act of the justice or adverse party, or by his own blameless misfortune, no matter how meritorious his case may be, the petition will be dismissed.")

[16] *Travelers Indem. Co. v. Callis*, 481 S.W.2d 384, 385 (Tenn. 1972) ("An [a]udita querela is where a defendant against whom a judgment is recovered and who is therefore in danger of execution, or perhaps actually in execution, may be relieved upon good matter in discharge which has happened since the judgment; as if the plaintiff has given him a general release, or if the defendant has paid the debt to the plaintiff without entering satisfaction on the record.").

[17] *See, e.g.*, *Brundage v. Cumberland Cty.*, 357 S.W.3d 361, 372 n.24 (Tenn. 2011), listing the following as examples of when the statutory writ of certiorari has been designated as the appropriate vehicle for review by the legislature: Tenn. Code Ann. § 49-5-513(a) (2009) (disciplinary decisions regarding tenured teachers) (this statute has been characterized as a species of statutory writ of certiorari in *Cooper v. Williamson Cty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn.1987)); Tenn. Code Ann. § 57-5-108(d) (revocation or suspension of a permit to sell beer); Tenn. Code Ann. § 63–12–128(c) (2010) (decisions of the Board of Veterinary Examiners).

sought finally determines the rights of the petitioner." *Admin.*, 2011 WL 2176387, at *5; *Buford v. Tenn. Dep't of Corr.*, No. M199800157COAR3CV, 1999 WL 1015672, at *4 (Tenn. Ct. App. Nov. 10, 1999) (adopting the three-part test for the statutory writ of certiorari outlined in Judge Cantrell's article).[18] In a statutory writ proceeding, the reviewing court may conduct a trial on the merits. *Buford,* 1999 WL 1015672, at *3.

"If the inferior tribunal, board, or officer is exercising judicial functions; then, in that event either writ may be employed to review the action of such inferior tribunal." *See Boyce v. Williams*, 215 Tenn. 704, 389 S.W.2d 272, 276 (Tenn. 1965). However, when a board is performing an administrative or quasi-judicial function, review under the common law writ of certiorari is appropriate because *de novo* review under the statutory writ of certiorari would violate the doctrine of separations of powers. *Admin.*, 2011 WL 2176387, at *5.

Although the Tennessee Supreme Court has recognized that, "[t]he question of whether an appeal of an administrative body's decision falls within a common law or statutory writ of certiorari can be a complex one," that is not the case here. *Tenn. Waste Movers, Inc. v. Loudon Cty.,* 160 S.W.3d 517, 520 n. 2 (Tenn. 2005). "Courts have consistently held that the proper vehicle by which to seek judicial review of decisions of the local Board of Zoning Appeals is the common law writ of certiorari." *See West*, 246 S.W.3d at 576 (citations omitted); *SMS Cmty. Hous., Inc. v. Memphis and Shelby Cty. Bd. of Adjustment*, 1986 WL 6790, at *1 (Tenn. Ct. App. June 17, 1986) (concluding that the common law writ of certiorari was the appropriate vehicle for review when plaintiffs sought review of board's decision to deny building permit). This is because "deciding whether a particular situation meets the requirements of a zoning ordinance is an administrative function, quasi-judicial in nature." *See Capps v. Metro. Gov't of Nashville and Davidson Cty.*, No. M2007-01013-COA-R3-CV, 2008 WL 5427972, at *6 (Tenn. Ct. App. Dec. 31, 2008) (citing *City of Brentwood v. Metro. Bd. of Zoning Appeals*, No. M2005-01379-COA-R3-CV, 2007 WL 1890641, at *6 (Tenn. Ct. App. June 28, 2007)); *Walker v. Metro. Bd. of Parks and Recreation*, No. 2008-01748-COA-R3-CV, 2009 WL 5178435, at *11 (Tenn. Ct. App. Dec. 30, 2009); *West*, 246 S.W.3d at 576 ("Decisions of those boards are administrative or quasi-judicial decisions that involve applying the facts of a situation before the board to the applicable ordinance or requirement, *i.e.*, enforcing, applying, or executing a law already in existence."). Tennessee Code Annotated Section 13-7-110 provides that, "[a]ny county legislative body may provide for the enforcement of its zoning regulations by means of the withholding of building permits[.]" Accordingly, "the decision of whether to grant a building permit . . . is [considered] an administrative act, even if made by a legislative body." *West*, 246 S.W.3d at 569. Mr. Howell concedes in his brief submitted to this Court that the City Council "serves as an appellate tribunal on building permit issues" in Bolivar. However, Mr. Howell claims that he was "denied" a hearing, and sought review of the City Council's actions because

---

[18] *See* Ben H. Cantrell, *Review of Administrative Decisions*, 4 Mem. St. U. L. Rev. 19 (1973).

the City Council "refused to even provide Mr. Howell with a decision." Regardless of the labels assigned in the complaint or the language of the requests for relief, the nature of Mr. Howell's suit is clear: Mr. Howell sought building permits and review of the City's officials' administrative actions through the issuance of a writ of certiorari. The statutory writ of certiorari was not available to Mr. Howell in this case because the decision to deny a building permit is an administrative function, reviewable through a common law writ proceeding. *See Brown v. Metro. Gov't of Nashville and Davidson Cty.*, No. M2016–02269–COA–R3–CV, 2018 WL 522419, at *2 (Tenn. Ct. App. Jan. 23, 2016) (affirming Chancery Court's review of denial of a building permit under the common law writ of certiorari); *Scott v. City of Knoxville*, No. E2014–01589–COA–R3–CV, 2015 WL 3545948, at *4–5 (Tenn. Ct. App. June 8, 2015); *West*, 246 S.W.3d at 577 ("There is no legally cognizable difference in a building permit and a certificate of compliance . . . [c]onsequentially, the appropriate method for review of such a decision is the common law writ of certiorari."); *Thompson v. Dep't of Codes Admin. Metro. Gov't of Nashville and Davidson Cty.*, 20 S.W.3d 654, 659 (Tenn. Ct. App. 1999) ("In the instant case, the nature of the decision below, the denial of a building permit, indicates that the appropriate means of review is the common law writ of certiorari.").

Mr. Howell attempts to differentiate the facts of this case from the litany of other cases that expressly hold that the common law writ of certiorari is the appropriate vehicle of review when a lower tribunal has denied a building permit. While he admits that the "common law writ of certiorari is indeed the undisputed method of reviewing decisions of boards of zoning in Tennessee," he argues that the statutory writ of certiorari is appropriate here because this is not an appeal from a board of zoning appeals. Although Mr. Howell concedes that it is the City Council that serves as the appellate body for land use decisions in Bolivar, Mr. Howell avers that "at the very least, for [any case] to be analogous to the matter presently before the Court, that case would deal with a building permit matter before a city council." Appellant avers that "extensive legal research has uncovered no such case throughout the entirety of Tennessee jurisprudence."

Such was the case, however, in *Scott v. City of Knoxville*, 2015 WL 3545948, at *4–5. In *Scott*, the owners of a funeral home applied for a building permit to construct a crematorium, as an addition to the existing funeral home. *Id*. at *1. The building inspection and planning department granted the permit. *Id*. However, owners of neighboring properties appealed the issuance of the permit to the local board of zoning appeals, and then after the board affirmed the planning department's decision to grant the permit, to the city council. *Id*. The city council agreed that the permit was properly issued, and the plaintiffs sought review through a common law writ of certiorari. *Id*. We confirmed that the common law writ of certiorari was the appropriate vehicle for appealing the issuance of the permit. *Id*. at *4–5.

It is not determinative that the City Council, rather than a body exclusively designated as the board of zoning appeals, served as the tribunal reviewing Mr. Farris'

decisions to deny Mr. Howell the building permits. Mr. Howell was not permitted a statutory writ of certiorari because the City Council engaged in an administrative function when it enforced the existing laws. *De novo* review of the City Council's decision to deny the permits would have violated the doctrine of separation of powers. Accordingly, we agree with the Chancery Court that the appropriate (and exclusive) vehicle for judicial review of the City Council's actions was a common law writ of certiorari.

## II. MOOTNESS

Having concluded that the common law writ of certiorari was the appropriate vehicle for review, the Chancery Court then determined that the case was moot, reasoning that Mr. Howell's suit no longer served as a means to provide judicial relief because the permits had been issued during the pendency of the case. Mr. Howell avers that his claims are not moot and asks that we remand for a trial *de novo* so that Mr. Howell will be "able to present this matter in its entirety to the [Chancery Court] for a final determination in which all remedies within the purview of the [Chancery Court] are available to it to compensate the Plaintiff for the actions of the Defendants[.]" Mr. Howell does not specify the nature of the remedies he pursues, but avers that the court may "make its own determination and fashion its own remedies" based on the facts of this case.

We have previously explained the doctrine of mootness as follows:

The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights. Thus, our courts will not render advisory opinions or decide abstract legal questions.

Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. The concept of mootness deals with the circumstances that render a case no longer justiciable.

A moot case is one that has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.

*Ivy v. Tenn. Dept. of Corr.*, No. M2007-02606-COA-R3-CV, 2008 WL 5169563, at *3 (Tenn. Ct. App. Dec. 9, 2008) (quoting *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994)) (internal citations and quotation marks omitted).

- 13 -

As we mentioned above, the common law writ of certiorari permits a court reviewing a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *West*, 246 S.W.3d at 574 (citations omitted). Under this standard of review, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision; (2) reweigh the evidence; or (3) substitute their judgment for that of the lower tribunal. *Id.* (citations omitted). The jurisdiction of the court in a common law writ proceeding is supervisory, and the court's review must be restricted to the external validity of the proceedings held in the lower tribunal. *Id.*; *Wills v. City of Memphis*, 457 S.W.3d 30, 39 (Tenn. Ct. App. 2014) ("It envisions that the court will review the record independently to determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'").

"[E]specially where zoning decisions by local officials are involved, the common law writ of certiorari, being a supervisory writ, somewhat limits the remedies courts employ when there has been error." *West*, 246 S.W.3d at 574 (citations omitted). "Remand is most commonly used, because courts should give local zoning officials the opportunity to perform their duties appropriately rather than substituting the court's own judgments for those of the zoning officials." *Id*. (citations omitted).   As we have previously stated:

> Because courts should avoid requiring local zoning authorities to take a particular action except in the most extraordinary circumstances, the most common judicial remedy in zoning cases is to remand the case to the zoning agency with instructions appropriate to the circumstances of the case. Rather than shouldering the local agency's responsibilities, the courts should insist that the agency carry out its task in an appropriate manner. The goal of a remand should be to place the parties and the agency in the position they would have been in had the agency not acted improperly.

*See Wright v. City of Shelbyville Bd. of Zoning Appeals*, No. M2011–01446–COA–R3–CV, 2012 WL 5378267, at *9 (Tenn. Ct. App. Oct. 31, 2012) (quoting *Hoover v. Metro. Bd. of Zoning Appeals,* 955 S.W.2d 52, 55 (Tenn. Ct. App. 1997)).

After initiating this litigation in March 2013, Mr. Howell eventually complied with the City Council's directive to complete formal applications and pay the requisite permitting fees. When questioned by the City's attorney during his deposition, Mr. Howell testified as follows:

> Q: [D]id you actually file [the permit applications] with any city official and say, "This is my official application for a building permit."

- 14 -

A: No.

Q: And at that point in time you didn't pay any type of fee—

A: No.

Q: --application fee or permit fee.

A: No.

Q: That didn't happen until July of 2013.

A: Right.

Q: It did happen then, though.

A: Did happen then.

Q: And the permits were issued then.

A: Right.

The Chancery Court was only permitted to review the City Council's actions in "denying" Mr. Howell's requests for building permits to determine whether the City Council exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *See West*, 246 S.W.3d at 574. Issuance of the permits rendered the Chancery Court's review purposeless. Contrary to Mr. Howell's position, it is not permissible for a court in a common law writ proceeding to "fashion its own remedies." Moreover, as discussed in greater detail below, Mr. Howell's claims invoking the original jurisdiction of the Chancery Court should have been dismissed *ab initio*. *See City of Murfreesboro v. Lamar Tenn., LLC*, No. M2010-00229-COA-R3-CV, 2011 WL 704412, at *2 (Tenn. Ct. App. Feb. 28, 2011) ("It has been consistently held that the common law writ of certiorari, which is appellate in nature, is incompatible with an original [jurisdiction] action, and the two cannot be brought together."). Accordingly, we agree that Mr. Howell's claims were properly dismissed as moot.[19]

---

[19] While we affirm the judgment of the Chancery Court in dismissing Mr. Howell's claims, we reiterate that his claims for injunctive relief, declaratory judgment, restraint of improper alienation and removal of officer, and compensatory damages, should have been dismissed by a motion to dismiss rather than at the summary judgment phase because those claims invoked the original jurisdiction of the trial court. *See Brown v. Tenn. Bd. of Prob. and Parole*, 2007 WL 2097548, at *4 (Tenn. Ct. App. July 6, 2007).

### III. REGULATORY TAKING CLAIM

On December 10, 2014, the Chancery Court entered an order granting Mr. Howell permission to amend his complaint to add an additional claim based upon the alleged inverse condemnation of Mr. Howell's properties by way of regulatory taking. On January 11, 2017, the Chancery Court granted Appellees' motion to dismiss Mr. Howell's regulatory taking claim, concluding that Appellees' "denial of the building permits was legally appropriate in light of the Tennessee Criminal Court of Appeals' [sic] ruling in [*Howell*, 2014 WL 586003, at \*5]."

While we agree that Mr. Howell's regulatory taking claim should have been dismissed, we do so because the regulatory taking claim—and all of Mr. Howell's claims invoking the original jurisdiction of the chancery court—should have been dismissed at the outset. We emphasize that a litigant may not bring claims invoking the original jurisdiction of the Chancery Court when he or she has initiated the proceedings by seeking a writ of certiorari. *See State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500, 502 (Tenn. Ct. App. 1991); *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983) ("The chancellor eventually dismissed the Declaratory Judgment aspect of the case, but we hold it should have been dismissed at the very outset."). In *Goodwin*, this Court stated as follows:

> [W]e wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self-evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

> The action of the board [in this case] . . . is reviewable in the Chancery Court as one of common law certiorari. This means it was the function of the Chancellor to review the record to determine if there was any material or substantial evidence to support the action of the board. Such review is actually a question of law and not of fact. Our scope of review of the action of the Chancellor is no greater than his of the board.

*Goodwin*, 656 S.W.2d at 386–87.

We have addressed similar facts before. *See Universal Outdoor, Inc. v. Tenn. Dep't of Transp.*, No. M2006-02212-COA-R3-CV, 2008 WL 4367555, at *8 (Tenn. Ct. App. Sept. 24, 2008). In *Universal Outdoor*, the plaintiffs sought review of a lower tribunal's denial of their application for a permit for a billboard. *Id*. at *1–2. The plaintiffs also attempted to join a claim for inverse condemnation in the Chancery Court. *Id*. at *8. We stated as follows:

> [The plaintiffs] could not bring a claim for compensation in this action for judicial review of an administrative decision to deny a permit. A direct or original action cannot be brought in conjunction with an action that is appellate in nature, such as judicial review under the APA or common law writ of certiorari.

*Universal Outdoor*, 2008 WL 4367555, at *9.

Because Mr. Howell sought the issuance of a common law writ of certiorari, an appellate review, his claims invoking the original jurisdiction of the chancery court, including his regulatory taking claim could not be joined in this proceeding. Accordingly we affirm the dismissal of Mr. Howell's regulatory taking claim. *See Clark v. Metro. Gov't. of Nashville and Davidson Cty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991) ("If a [t]rial [c]ourt reaches the correct result, its judgment is entitled to affirmance irrespective of the reasons stated."). The remaining issues raised by Appellees are pretermitted.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we conclude that the dismissal of all of Mr. Howell's claims was proper, and therefore the judgment of the trial court is affirmed. Costs of this appeal are assessed against the Appellant, V. Calvin Howell and his surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE