IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 1, 2020 Session

## THE NORTHSHORE CORRIDOR ASSOCIATION ET AL. v. KNOX COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-462-18        Kristi M. Davis, Judge**

_____

### No. E2020-00573-COA-R3-CV

_____

Upon a petition for common law certiorari filed by a community organization comprised of several homeowners' associations and individual homeowners, the trial court reversed a decision by the Knox County Board of Zoning Appeals ("BZA") affirming the Knoxville-Knox County Metropolitan Planning Commission's approval of the respondent developer's neighborhood development plan. The trial court determined the BZA's decision to be illegal upon finding that the development plan included an on-site wastewater treatment plant in violation of the applicable zoning ordinance. The trial court subsequently denied cross-motions to alter or amend the judgment. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Benjamin C. Mullins, Knoxville, Tennessee, for the appellant, Post Oak Bend, LLC.

Daniel A. Sanders, Deputy Knox County Law Director, Knoxville, Tennessee, for the appellants, Knox County, Tennessee, and the Knox County Board of Zoning Appeals.[1]

Thomas M. Hale and Brandon L. Morrow, Knoxville, Tennessee, for the appellees, The Northshore Corridor Association, John and Betty Gulley, Gerd and Jill Krohn, Diane Montgomery, Tyrell and Melody Smith, and Bryan Spears.[2]

_____

[1] Knox County, Tennessee, and the Knox County Board of Zoning Appeals filed a notice with this Court that they were joining in the principal appellate brief submitted by Post Oak Bend, LLC.

[2] Two additional petitioners, Dr. Wallin and Leslie Myers, were not named as participating in this appeal.

**OPINION**

**I. Factual and Procedural Background**

The property proposed for development by the respondent developer, Post Oak Bend, LLC ("Post Oak"), consists of approximately 415.04 acres located on Tooles Bend Road in Knox County, Tennessee ("the Property"). As the trial court noted in its final order, "only 260.51 acres [of the Property] are available for development because of where the property lies in relation to lake-contour lines." In 1993, the then-owners of the Property, David and Jane Bailey, had successfully petitioned the Knoxville-Knox County Metropolitan Planning Commission ("MPC")[3] to rezone the Property from "Agricultural" to "Planned Residential" ("PR"). The 1993 rezoning application and related materials, submitted to the trial court in the instant action as part of the record before the BZA, support the trial court's description of the 1993 rezoning as follows:

> In 1993, the property owners petitioned the MPC to have the property rezoned to PR, which allows 1-3 dwelling units per acre. The property owners represented to the MPC that they intended to develop the property for single family residential purposes. The property owners also submitted documents addressing density and traffic. These documents stated that "[a] preliminary traffic analysis has been completed. This analysis indicated, based upon a 1.25 du/ac (270 units), that the total traffic on Tooles Bend Road would be 203 vehicles per hour during the morning peak hours and 268 vehicles per hour during the afternoon peak hours."

In 2018, Post Oak submitted a concept plan ("Concept Plan") and a development plan ("Development Plan") concerning the Property to the MPC for "Use on Review" approval.[4] As described in the trial court's order, "[t]he proposed Development Plan was for a large neighborhood . . . with 620 dwelling units," and "[a]lthough initial plans submitted to the MPC did not include a sewer treatment plant on the property, a Revised Plot Plan was subsequently submitted to include a sewer treatment plant." The initial hearing before the MPC took place on August 9, 2018, with the MPC voting to postpone action at that time. A month later, the MPC staff issued a Report of Recommendations,

---

[3] In an affidavit filed as a stipulated exhibit prior to the certiorari hearing, Executive Director Gerald Green noted that the Knoxville-Knox County Metropolitan Planning Commission has since become known as the Knoxville-Knox County Planning Commission. Because the Commission is referred to as "the MPC" throughout the instant record, we will refer to it as the MPC in this opinion.

[4] Section 5.13.15.B of the Knox County Zoning Ordinance provides in pertinent part: "No building permit shall be issued for development of any property within a PR, Planned Residential Zone until a written application for review and approval of the development plan has been filed with the planning commission."

which included, as the trial court noted in its final order, "seventeen variances; approval of the Concept Plan, subject to twenty conditions; and approval of the Development Plan, including the Revised Plot Plan, subject to three conditions, which included 'meeting all applicable requirements of the Knox County Zoning Ordinance.'"  The MPC conducted a subsequent hearing on September 13, 2018, by which time Post Oak had also provided the MPC with its revised plot plan ("Revised Plot Plan"), indicating, *inter alia*, that a wastewater treatment plant would be built on the Property.  At the close of the hearing, the MPC approved Post Oak's use-on-review application, including the Concept Plan, Development Plan, and Revised Plot Plan.

Prior to the September 2018 MPC hearing, the petitioners in this action, the Northshore Corridor Association, including individually named members, John and Betty Gulley, Gerd and Jill Krohn, Diane Montgomery, Dr. Wallin and Leslie Myers, Tyrell and Melody Smith, and Bryan Spears ("collectively, NCA"), had urged the MPC to require Post Oak, as NCA notes on appeal, "to submit an expanded traffic study that would include an analysis of the impact the traffic from the development would have along Northshore Drive."  As stated in the MPC's September 2018 staff recommendations, a "Level II Traffic Impact Study" had been prepared by CDM Smith, Inc. ("CDM Smith"), in June 2018 and submitted with Post Oak's Concept Plan for review by the MPC, the Knox County Department of Engineering and Public Works, and the Tennessee Department of Transportation.  Stating that the traffic study "prepared and reviewed for this development [was] the appropriate level of review," MPC staff recommended five conditions "regarding road improvements to address the traffic impact from the proposed development."  Although CDM Smith revised the traffic impact study on July 26, 2018, it remained a Level II study.  In a letter sent prior to the September 2018 hearing, MPC Executive Director Gerald Green denied NCA's request for a Level III traffic impact study.

NCA appealed the MPC's approval of Post Oak's use-on-review application to the BZA, raising issues concerning, *inter alia*, the wastewater treatment plant, the traffic study, population density, and Post Oak's failure to obtain approval from the Knox County Health Department ("Health Department") prior to its initial presentation before the MPC.[5]  Following a hearing conducted on November 28, 2018, the BZA voted five to three to deny NCA's appeal.  In addition to argument from counsel, the following individuals spoke in support of NCA's position:  Don R. Moore, President of EFG Engineering Company, concerning traffic issues; William Daniels, a former Knox County Commissioner, former member of the BZA, and area resident; and Sandy Gammon, a

---

[5] The record reflects that on October 31, 2018, prior to the second hearing before the MPC, Ronnie Nease, the Director of Environmental Health with the Health Department, provided written approval of the Concept Plan to the MPC.

realtor and area resident presenting objections to the Development Plan. In addition to argument from Post Oak's counsel and Knox County Deputy Law Director Daniel A. Sanders, the following individuals spoke in support of approval: Greg Gamble, a land planner for the Post Oak development; Jeff Mize, a traffic engineer with CDM Smith; and Chris Ooten with Post Oak's developer, Safe Harbor Development. MPC Executive Director Green, MPC Principal Planner Tom Brechko, and Jim Snowden, Director of Knox County Engineering and Public Works, also spoke.

On December 27, 2018, NCA filed a petition for writ of certiorari in the trial court pursuant to Tennessee Code Annotated §§ 27-8-101 (2017) and 27-9-101 (2017), as well as § 6.60.06 of the Knox County Zoning Ordinance ("Zoning Ordinance"). NCA alleged, *inter alia*, that in affirming the MPC's approval of the Development Plan, the BZA "exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; and/or acted without material evidence to support its decision." NCA also included in its petition a request for declaratory judgment concerning the BZA's alleged actions in approving the Development Plan.

On February 7, 2019, Post Oak filed an answer to the petition concomitantly with motions for dismissal of the declaratory judgment claim and for a more definite statement as to the petition for writ of certiorari. In its answer, Post Oak denied the existence of any grounds for overturning the BZA's decision. Specifically as to the wastewater treatment plant, Post Oak responded in pertinent part that it had "worked extensively with MPC and Knox County staff on the Development Plan and Use on Review" and that "it was always the intent for part of the Property to be served with a wastewater treatment plant paid for by Post Oak but owned and operated by First Utility District."

NCA subsequently voluntarily nonsuited its request for declaratory judgment and amended its petition for writ of certiorari. In its amended petition, filed on April 11, 2019, NCA specifically asserted that the BZA's decision should be reversed because (1) a commercial wastewater treatment plant, included in the Development Plan, was not a permissible use in a PR zone pursuant to the Zoning Ordinance; (2) the Development Plan was contrary to the "express written representations made by members of the Bailey family" when the Property was rezoned to PR; (3) the procedure set forth in Zoning Ordinance § 6.50.01 was not followed when Post Oak presented the Revised Plot Plan without prior approval from the Health Department; (4) the demonstrated increase in traffic that would be caused by the proposed development constituted a failure to satisfy a criterion for approval of a use-on-review application under the Zoning Ordinance; (5) considering the non-buildable land included within the Property, the density of population in the buildable land constituted a failure to satisfy a criterion for approval; (6) the proposed use was incompatible with the surrounding area and thus failed to meet a criterion for approval; (7) statements made by two BZA members during deliberations

indicated that they had voted contrary to their opinions because they did not understand the applicable *de novo* review standard; (7) Mr. Moore's expert testimony presented by NCA concerning the unsafe conditions of Tooles Bend Road and Tedford Lane was not rebutted during the BZA proceedings; (8) approval of the Development Plan was not in alliance with the Knoxville/Farragut/Knox County Growth Policy Plan ("Growth Policy Plan") as required by Tennessee Code Annotated § 6-58-107(a) (2015); (9) approval of the Development Plan was not in compliance with the 2016 Southwest County Sector Plan; and (10) some materials submitted to the MPC were not transmitted to the BZA.[6] NCA also requested reasonable attorney's fees and expenses pursuant to the Equal Access to Justice Act of 1984, codified at Tennessee Code Annotated § 29-37-101, *et seq.* (2012 & Supp. 2020).

NCA filed a pre-hearing memorandum of law on April 25, 2019, which it subsequently supplemented. On May 24, 2019, Post Oak filed an answer to NCA's amended petition as well as a response to the prehearing memorandum of law. Post Oak requested, *inter alia*, that the trial court dismiss NCA's petition for failure to state a claim upon which relief could be granted. The other respondents, the BZA and Knox County, subsequently filed a notice stating that they joined in Post Oak's response. NCA filed a reply memorandum as well.

Following a hearing conducted on June 18, 2019, the trial court entered its judgment reversing the BZA's decision on November 26, 2019. In determining that the BZA's decision was illegal because it was in violation of the Zoning Ordinance, the trial court found that a wastewater treatment plant or other public utility was not "a listed permitted use in a PR zone," pursuant to Zoning Ordinance § 5.13.02, and that in contrast, a public utility was a specifically listed permitted use in other residential zoning sections. Applying the canon of statutory construction of *expressio unius est exclusio alterius*, *see Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011), which holds that the expression of one thing implies the exclusion of others, the trial court found that the inclusion of public utilities as a permitted use in other residential zones implied the exclusion of them in a PR zone. The trial court also found that two other categories of use raised as allowing for the wastewater treatment plant in a PR zone, an "accessory use," raised before the MPC, or a catch-all "other [compatible] use," raised before the BZA, did not apply to a public utility such as a wastewater treatment plant under the plain language of the Zoning Ordinance. Determining that the BZA's approval of Respondents' use-on-review application for the Development Plan was illegal because

---

[6] NCA had also filed a motion with the trial court to remand its appeal of the MPC's decision back to the BZA, asserting that several documents that had been before the MPC were not transmitted with the MPC record to the BZA. The trial court entered an order denying NCA's motion to remand on April 10, 2019, prior to NCA's filing of its amended petition.

it was in violation of the Zoning Ordinance, the trial court reversed the BZA's decision on that basis.

The trial court also addressed other issues raised by NCA, finding that (1) material evidence in the record supported the BZA's decision that traffic safety issues had been adequately addressed by the Development Plan; (2) the increase in population density represented by the Development Plan was not precluded by the density provided during the 1993 rezoning; (3) Post Oak's initial failure to obtain the Health Department's approval of the Development Plan constituted harmless error because it had been corrected; (4) problems with transmittal of the record from the MPC to the BZA were ultimately rectified when "information that was excluded was presented to the BZA by way of argument from [NCA's] attorney"; and (5) the transcript of the BZA hearing demonstrated that "although some of the comments appear to indicate some confusion regarding the BZA's role, those comments do not negate what appears to otherwise have been a deliberative process, which included the consideration of documents, statements by experts and citizens, and argument of counsel." The trial court therefore found NCA's additional arguments, apart from that concerning the wastewater treatment plant, to be "not persuasive."

Post Oak, Knox County, and the BZA (collectively, "Respondents") timely filed a "Joint Motion to Alter or Amend Judgment," pursuant to Tennessee Rule of Civil Procedure 59.04, arguing that the trial court had erred in its application of statutory construction and averring that "[t]he dispute regarding the existence of a sewer treatment plant in the development is no longer justiciable" because "off-site sewer service" had been procured for the proposed development. Respondents attached to their motion an affidavit executed by Edwin Deyton, a project engineer at First Utility District ("First Utility"), which, according to Mr. Deyton, had agreed to provide sewer service to the proposed development. Mr. Deyton's affidavit was executed on December 18, 2019. Respondents also attached an affidavit concomitantly executed by MPC Executive Director Green attesting to the same information. For its part, NCA subsequently filed a cross-motion to alter or amend the judgment because, as NCA states on appeal, "it felt the court had not considered its arguments based on the Growth Policy Plan."

Following a hearing conducted on February 28, 2020, the trial court entered an order on March 23, 2020, denying both motions to alter or amend and incorporating its oral findings made at the close of the hearing. Post Oak timely appealed, and Knox County and the BZA subsequently joined in the appeal.

## II. Issues Presented

Respondents present three issues on appeal, which we have restated as follows:

1. Whether the trial court erred by finding this case to be justiciable despite Respondents' post-judgment filings indicating that an on-site wastewater treatment plant was no longer needed for the Post Oak development to continue.

2. Whether the trial court erred by finding that § 5.13 of the Zoning Ordinance does not allow a development that includes an on-site wastewater treatment plant in a PR zone.

3. Whether Knox County has the authority to regulate a quasi-governmental utility company's placement of a wastewater treatment plant through application of the Zoning Ordinance.

NCA has presented two additional issues on appeal, which we have similarly restated as follows:

4. Whether Post Oak waived its argument concerning Knox County's authority to regulate a utility company's placement of a wastewater treatment plant by failing to raise it before the administrative bodies and the trial court.

5. Whether the trial court's decision should be affirmed based on one or both of the following alternative grounds:

   (a) Whether the BZA's approval of the Development Plan was illegal because the Development Plan was inconsistent with and contrary to the provisions of the Growth Policy Plan.

   (b) Whether the BZA's approval of the Development Plan was arbitrary under the *de novo* scope of review because some BZA members' votes did not comport with their deliberative statements.

## III. Standard of Review

Respondents are appealing the trial court's reversal of the BZA's decision to uphold the MPC's approval of Post Oak's Development Plan. The trial court properly reviewed the BZA's decision in accordance with the standard for common law writ of certiorari. As this Court has recently explained:

The vehicle for reviewing decisions of local boards of zoning appeals is through the common law writ of certiorari. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals of Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997) (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)). Under the common law writ of certiorari, the reviewing court must examine whether the municipal agency acted illegally, arbitrarily, fraudulently, or in excess of its jurisdiction. *McCallen*, 786 S.W.2d at 638. In doing so, the court determines "whether there is any material evidence that supports the action of the administrative agency." *Laidlaw Envtl. Servs. of Nashville, Inc. v. Metro. Bd. of Health for Nashville & Davidson Cnty.*, 934 S.W.2d 40, 49 (Tenn. Ct. App. 1996) (citing *Lansden v. Tucker*, 204 Tenn. 388, 321 S.W.2d 795 (1959)). Courts must not "reweigh the evidence" or "scrutinize the intrinsic correctness of the decision," but independently review the record to "determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'" *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 [(Tenn. Ct. App. 2000)] (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). A challenge to the evidentiary foundation for a local zoning decision presents a question of law, which we review *de novo* with no presumption of correctness. *Id.*, 46 S.W.3d at 759. This Court's review of the evidence on appeal is no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

*Venture Holdings, LLC v. Metro. Gov't of Nashville & Davidson Cty.*, 585 S.W.3d 409, 416-17 (Tenn. Ct. App. 2019) (quoting *Gulley v. Robertson Cty. Planning & Zoning Comm'n*, No. M2015-00734-COA-R3-CV, 2016 WL 2898478, at *2 (Tenn. Ct. App. May 12, 2016)).

"We review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." *Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004) (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)). As our Supreme Court has elucidated concerning the abuse of discretion standard of review:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable

alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of

correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

## IV. Justiciability of Wastewater Treatment Plant Issue

Respondents contend that the affidavits they presented to the trial court with their Tennessee Rule of Civil Procedure 59.04 motion to alter or amend demonstrated that because First Utility would have the capacity to serve the proposed development without an on-site wastewater treatment plant and intended to do so, any issue concerning the wastewater treatment plant was rendered moot and therefore nonjusticiable because the trial court had based its decision to reverse the BZA's decision on that issue. NCA contends that the trial court properly denied Respondents' motion to alter or amend upon finding that the scope of the trial court's review was the administrative record that had been before the BZA, including the Development Plan as it had been presented by Post Oak to the BZA, and that the trial court did not err in finding that the issue of the wastewater treatment plant remained justiciable. Upon careful review, we conclude that the trial court did not abuse its discretion in denying Respondents' motion to alter or amend and did not err in finding the issue of the wastewater treatment plant's inclusion in the Development Plan to be justiciable.

We note that justiciability is a threshold matter. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013) ("This Court must first consider questions pertaining to justiciability before proceeding to the merits of any remaining claims."). Respondents in this action initially raised issues solely pertaining to what the trial court found to be the dispositive matter of the wastewater treatment plant. Respondents thereby initially argued in their principal brief on appeal that if they prevailed on the proposition that inclusion of the wastewater treatment plant were no longer justiciable, the trial court, and in turn this Court, would have lost subject matter jurisdiction over the entire case. *See State ex rel. Adventist Health Care Sys./Sunbelt Health Care Corp. v. Nashville Mem'l Hosp., Inc.*, 914 S.W.2d 903, 907 (Tenn. Ct. App. 1995) ("If by the time a controversy reaches the appellate court questions presented have been deprived of practical significance and have become academic and abstract in character, the appeal should be dismissed as moot.").

However, in addition to arguing that the issue of the wastewater treatment plant remained justiciable, NCA responded by raising additional issues concerning the trial court's denial of its Tennessee Rule of Civil Procedure 59.04 motion to alter or amend, which had been based on NCA's allegations that the BZA's approval of the use-on-review for the Development Plan was illegal because the decision violated the Growth

Policy Plan.  As impliedly recognized in Respondents' reply brief, with NCA's presentation of additional issues, Respondents' subject matter jurisdiction argument narrowed to a question of the justiciability of issues pertaining to the wastewater treatment plant.

As our Supreme Court has explained:

The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in dispute, *Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 838 (Tenn. 2008), and are not merely "theoretical or abstract," *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.,* 301 S.W.3d 196, 203 (Tenn. 2009).  A justiciable issue is one that gives rise to "a genuine, existing controversy requiring the adjudication of presently existing rights."  [*UT Med. Grp., Inc. v.*] *Vogt,* 235 S.W.3d [110,] 119 [(Tenn. 2007)].

*Hargett*, 414 S.W.3d at 96.  Noting that "[j]usticiability encompasses several distinct doctrines," the *Hargett* Court elucidated the following considering the doctrine of mootness at issue in the instant action:

To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency.  *Norma Faye Pyles Lynch Family Purpose LLC,* 301 S.W.3d at 203-04.  An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, *Lufkin v. Bd. of Prof'l Responsibility,* 336 S.W.3d 223, 226 (Tenn. 2011), or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment, *see Knott v. Stewart Cnty.*, 185 Tenn. 623, 207 S.W.2d 337, 338 (1948); *Cnty. of Shelby v. McWherter,* 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996).  This Court has recognized a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness:  (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct. *Lufkin,* 336 S.W.3d at 226 n.5 (citing *Norma Faye Pyles Lynch Family Purpose LLC,* 301 S.W.3d at 204).

*Id.*

In analyzing the justiciability of the wastewater treatment plant issue in this action, it is helpful to review a timeline, constructed from the materials in the record before us, of how the issue evolved during the proceedings before the BZA and the trial court prior to Respondents' filing of their motion to alter or amend:

July 19, 2018:      Mr. Deyton with First Utility sent a letter to the MPC, stating that First Utility personnel had met with Post Oak's "Development Team" "to review the intended land use and utility needs for the subject project" and that, *inter alia*, First Utility had "no objection to providing service to the Development."

August 9, 2018:      The MPC meeting minutes for this date reflect that the MPC began its review of Post Oak's Concept Plan, voting to postpone a decision. At this point, the Concept Plan did not include an on-site wastewater treatment plant.

September 13, 2018:      The MPC's minutes for this date indicate that it voted to approve Post Oak's Development Plan per MPC staff recommendations, specifically that the Development Plan be approved "for up to 198 detached and 184 attached residential units on individual lots, 240 multi-dwelling condominium units, development amenity areas, and a sewer treatment facility . . . ." By the time of this meeting, Post Oak had provided the MPC with the Revised Plot Plan, which indicated that a wastewater treatment plant would be built on the Property.

October 11, 2018:      NCA, acting through its counsel, sent a letter giving notice to the BZA of its appeal of the MPC decision. Two of NCA's allegations of error involved the wastewater treatment plant, including that the plant had not been included in Post Oak's initial application and that the plant would "introduce a commercial sewage treatment plant into the Tooles Bend Peninsula (which is out of character for that area) and would amount to a 400% increase in traffic on Tooles Bend Road."

October 31, 2018:      The Health Department approved the Concept Plan, noting that the "proposed public sanitary sewer will be provided by First Utility District."

| November 5, 2018: | Bruce Giles, a general manager with First Utility, sent email correspondence to Safe Harbor Development, concerning details for the construction, planning, and placement of a wastewater treatment plant. This correspondence was included in the package of materials presented to the BZA for consideration. |
| --- | --- |
| November 2018: | Cannon & Cannon, Inc., an engineering services corporation, completed an undated work authorization form on behalf of First Utility as its client, for "Professional Engineering Services Associated with Post Oak Bend Wastewater Treatment Plant." This form was also submitted to the BZA, although it was signed only by a vice president of the engineering company and not a First Utility official. |
| November 26, 2018: | Post Oak, through its counsel, sent a letter to the BZA, responding to NCA's objections to an on-site wastewater treatment facility. |
| November 28, 2018: | The BZA conducted the hearing during which it approved Post Oak's use-on-review application for the Development Plan, including the on-site wastewater treatment plant. |
| December 27, 2018: | NCA filed its initial petition for writ of certiorari in the trial court, alleging, as pertinent here, that the approval of the Development Plan with the inclusion of an on-site wastewater treatment plant had been in violation of the Zoning Ordinance. This issue remained in play throughout the proceedings in the trial court. |
| February 7, 2019: | Post Oak filed its answer to NCA's initial petition, averring, as pertinent here, that "the plot point plan presented to and considered by the MPC showed the location of the proposed wastewater treatment plant" and acknowledging that MPC staff issued a report in September 2018 "with an attached plot plan which showed the proposed wastewater treatment plant." |
| November 26, 2019: | The trial court entered its order reversing the BZA's approval of Post Oak's use-on-review application for the Development Plan upon finding that the inclusion of an on-site wastewater |

treatment plant in an area zoned as PR was in violation of the Zoning Ordinance.

Respondents supported their motion to alter or amend with an affidavit executed by First Utility Project Engineer Deyton and an affidavit executed by MPC Executive Director Green. Describing First Utility's planned improvements to an existing facility, Mr. Deyton concluded: "In light of the proposed improvements to the Ebenezer Pump Station, gravity collection system, and force main, it is no longer necessary that a wastewater treatment plant be constructed or placed on property to be developed by Post Oak Bend to provide sewer services to the development." Mr. Deyton attached email correspondence, dated May 2019, from him to Mr. Ooten with Safe Harbor Development. Mr. Deyton asserted in his affidavit that at the time, he had "outlin[ed] the changes in circumstances that would allow First Utility District to provide sewage collection without construction of a new wastewater treatment plant." In his affidavit, Mr. Green stated, *inter alia*, that "[t]he key concern for the Planning Department was only that adequate sewer services could be provided to the development and not whether the services provided were off-site or through an on-site plant." Mr. Green opined that "[i]f off-site sewer services could be provided, therefore eliminating the need for an on-site waste water treatment plant, then the removal of the on-site plant from the Final Plat could be approved administratively."

In denying Respondents' motion to alter or amend, the trial court found in pertinent part:

> I do agree with [NCA] on this issue that I can't go back and recreate now facts that were not in the record before MPC and BZA and certainly before me on appeal.

> Particularly in this case when we're talking about the one issue that essentially is dispositive of this case, to go back and say now we're going to take it off the table, creates a number of issues. It creates, in my mind, some due process issues with respect to the ability – I mean, as a practical matter, if you could go back and change the nature of the plan after it's already been approved or disapproved and after it's already been appealed and it's been decided, then what opportunity does anyone have at that point to object to it, voice any concerns? They have none because it just becomes, for lack of a better term, a little bit willy nilly at that point. We'll put in it what we want to put in it when we want to put it in is not compliant with, in this Court's opinion, due process. So I'm not going to change my decision based on new information that's been presented and has not been in the record and was not part of the record before this Court.

The trial court thereby denied Respondents' motion to alter or amend because (1) the information that Respondents sought to have considered had not been in the record before the BZA and (2) Respondents' effort to revise the Development Plan after the BZA review provided no due process for the revised method in which the development's wastewater would be handled to be presented in a public forum. Upon thorough review of the record and applicable authorities, we agree with the trial court.

NCA properly sought judicial review of the BZA's decision in this case via common law writ of certiorari. *State ex rel. Howell v. Farris*, 562 S.W.3d 432, 443 (Tenn. Ct. App. Mar. 9, 2018) ("Courts have consistently held that the proper vehicle by which to seek judicial review of decisions of the local Board of Zoning Appeals is the common law writ of certiorari." (quoting *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 576 (Tenn. Ct. App. 2005) (internal citations to record omitted in *Farris*))). This Court has generally defined a writ of certiorari as "an order from a superior court to an inferior [tribunal] to send up the record for review." *Farris*, 562 S.W.3d at 441 (quoting *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001)). As such, "review under the common law writ of certiorari is generally limited to the record made before the lower tribunal or board . . . ." *411 P'ship v. Knox Cty.*, 372 S.W.3d 582, 588 (Tenn. Ct. App. 2011). When review is conducted under common law of certiorari, "the Chancery Court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue *de novo* as the initial decision maker." *Farris*, 562 S.W.3d at 442 (quoting *State ex rel. Moore & Assoc's, Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005)).

In the case at bar, the BZA reviewed the Development Plan inclusive of an on-site wastewater treatment plant and entertained debate during the November 28, 2018 meeting concerning whether the Zoning Ordinance provided for such a facility in a PR zone. Respondents assert that the means of providing sewage services to the Post Oak development was subject to change throughout the proceedings, stating that Post Oak, First Utility, and Knox County "always contemplated" that "the exact location of an on-site wastewater treatment plant, or the necessity of a wastewater treatment plant, was subject to change based upon further engineering and design following the approval of the initial Concept and Development Plan."

In support of this assertion, Respondents cite to two places in the record: Mr. Deyton's July 19, 2018 correspondence to the MPC, noted above, and a portion of the August 2018 MPC meeting minutes. In his correspondence, Mr. Deyton stated that First Utility personnel had met with the Post Oak design team to "evaluate the existing distribution and collection systems, model impacts resulting from development, and develop alternatives for the required 'offsite' utility improvements." In the cited section

of the August 2018 MPC minutes, Mark McKenny, an employee of First Utility's engineering department stated in relevant part:

> Water is provided on the peninsula currently, so we can provide water to this new development. It may require larger lines at some point, but we'll just have to work with the developer in order to make that work. There is no sewer. We have talked about options with the developer. They will either have to get sewer all the way back to our plant – which is approximately 6 to 7 miles away – or we will have to put in a new plant on the peninsula to serve this development. We don't know which option it will be at this point. We'll have to provide – once they provide numbers for the number of residents, the flows that will be required, all that kind of thing, we'll put together plans with the engineers for the development and see what the best option is.

However, by the time of the second MPC hearing in September 2018, Post Oak had submitted the Development Plan complete with an indication that sewage services would be provided through construction of an on-site wastewater treatment plant. During the BZA hearing in November 2018, a question arose as to whether the location of the wastewater treatment plant had been clear to the MPC when it approved the Development Plan. Referencing MPC Principal Planner Brechko's comments, Mr. Green stated during the BZA hearing:

> [A]s Mr. Brechko pointed out, the planning commission expressly understood that the sewage treatment plant would be on the property, approved that as part of the development plan. The development plan was submitted prior to the MPC meeting. The location was identified on the plan, and the approval from the First Utility District for that type [of] wastewater treatment was discussed at the planning commission meeting.

Contrary to Respondents' position that whether wastewater treatment would be serviced off-site or through construction of an on-site plant was understood to be subject to change, the on-site facility was clearly included in both the MPC's and the BZA's approval of the Development Plan. We determine that the trial court properly found that its review was confined to the administrative record before the BZA. We therefore determine that the trial court did not abuse its discretion in declining to consider affidavits not contained in the record of the proceedings before the BZA. *See Lee Med.*, 312 S.W.3d at 524 (explaining that in reviewing a trial court's discretionary decision, this Court will review whether the factual basis for the decision is supported by the evidence, whether the trial court identified "the most appropriate legal principles," and whether the decision was "within the range of acceptable alternative dispositions").

Moreover, we agree with the trial court's finding that if removal of the on-site wastewater treatment plant from the Development Plan could simply be initiated "administratively," as Mr. Green termed it, without involvement of the procedural review process before the MPC and the BZA and the accompanying potential for judicial review, the opportunity for a full administrative review with public input of the alternative sewer services plan would be circumvented. As NCA notes on appeal, "[a] plan with sewer lines [to an off-site facility] was not approved by the MPC or the BZA." In turn, the approval of such a plan also was not appealed to the trial court. We determine that the trial court did not err in finding that the issue of the wastewater treatment plant's inclusion was not rendered moot by Respondents' motion to alter or amend and that the issue remains justiciable.

## V. Violation of Zoning Ordinance

Having determined that the issue of the on-site wastewater treatment plant remains justiciable, we turn now to Respondents' contention that the trial court erred by finding that § 5.13 of the Zoning Ordinance does not allow a development in a PR zone that includes an on-site wastewater treatment plant. Respondents do not dispute the trial court's finding that in the Zoning Ordinance, public utilities, such as the proposed wastewater treatment plant, are not expressly listed among permitted uses in a PR zone and that, in contrast, public utilities are expressly listed among permitted uses in certain other residential zones, specifically in RAE Exclusive Residential at Zoning Ordinance § 5.10.02.D, RA Low Density Residential at § 5.11.02.H, and RB General Residential at § 5.12.02.I. Rather, Respondents argue that the trial court erred in its interpretation of the ordinance through application of the maxim of statutory interpretation known as *expressio unius est exclusio alterius* without first finding the ordinance at issue to be ambiguous. Respondents also argue that the trial court erred by failing to construe the ordinance with sufficient deference to the property owner and to local officials' interpretation that the wastewater treatment plant would be a "compatible use" under §§ 5.13.01 and 5.13.02.G. We will address each of Respondents' arguments in turn.

"Interpretation of statutes and ordinances is a question of law which we review de novo." *City of Knoxville v. Entm't Res., LLC,* 166 S.W.3d 650, 655 (Tenn. 2005)). With respect to interpreting ordinances, this Court has explained:

> When the language of an ordinance is clear, the courts will enforce the ordinance as written. When, however, the language of an ordinance is ambiguous, the courts will resort to the customary principles of statutory construction. *See Whittemore v. Brentwood Planning Comm'n,* 835 S.W.2d [11,] 15 [(Tenn. Ct. App. 1992)]. Accordingly, the reviewing courts will

construe a zoning ordinance as a whole and will give its words their natural and ordinary meaning. *See Lions Head Homeowners' Ass'n v. Metropolitan Bd. of Zoning Appeals,* 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997); *Boles v. City of Chattanooga*, 892 S.W.2d 416, 420 (Tenn. Ct. App. 1994). They will also seek the interpretation that is most consistent with the ordinance's general purposes, but they will resolve ambiguities in favor of the property owner's right to the unrestricted use of his or her property. *See State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v City of Oak Hill*, 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959).

*Venture Holdings*, 585 S.W.3d at 418 (quoting *421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000)).

Section 5.13.01 of the Zoning Ordinance sets forth a general description of a PR zone as follows:

*General description.* The regulations established in this zone are intended to provide optional methods of land development which encourage more imaginative solutions to environmental design problems. Residential areas thus established would be characterized by a unified building and site development program, open space for recreation and provision for commercial, religious, educational, and cultural facilities which are integrated with the total project by unified architectural and open space treatment.

Each planned unit development shall be compatible with the surrounding or adjacent zones. Such compatibility shall be determined by the planning commission by review of the development plans.

A planned unit development occupying not less than twenty (20) acres may contain commercial uses as hereinafter provided.

Section 5.13.02 of the Zoning Ordinance sets forth "[p]ermitted uses" in a PR zone, providing in pertinent part:

A.    The following dwelling units are permitted:

1.    Houses and attached houses, not including mobile homes.

2.    Duplexes.

- 18 -

3.	Multi-dwelling structures and developments.

B.	Accessory uses, buildings and structures.

C.	Commercial uses in a planned unit development occupying not less than twenty (20) acres only.  Commercial uses shall include marinas and boat liveries, provided they meet the requirements of section 4.30, "Standards for marina and boat livery development," of these regulations.  One (1) acre of commercial uses may be permitted for each one hundred (100) units in the project provided that twenty-five (25) percent of the total units proposed shall be ready for occupancy prior to any commercial building permit being issued.  Such commercial uses shall conform with the use and parking requirements of the Shopping Center Zone as regulated in section 5.34, "Shopping Center Zone (SC)," of these regulations.

D.	Recreation uses. . . .

E.	Education uses. . . .

F.	Community facilities uses such as churches and other religious institutions and nonprofit clubs such as country clubs, swimming and/or tennis clubs.

G.	Other uses, deemed compatible with the proposed development by the planning commission, including home occupations subject to section 4.90, "Home occupations."

H.	Demolition landfills less than one (1) acre in size subject to article 4, "Supplementary regulations", subsection 4.80.01.A, "Demolition landfills" (on site generated waste).

I.	Yard sales and rummage sales.

J.	Day care homes and group day care homes, if the provider lives on site . . . .

K.	Wireless communications facilities . . . .

In finding that the BZA's decision to approve Respondents' use-on-review application of the Development Plan was in violation of Zoning Ordinance § 5.13.02, the trial court stated in its order:

It is undisputed that a sewage treatment plant, or any public utility, is not a listed permitted use in a PR zone, as delineated in Knox County Zoning Ordinance §5.13.02. In contrast, other zones specifically allow for public utilities. RAE Exclusive Residential, RA Low Density Residential, and RB General Residential all allow, as a permitted use, "[p]ublic utilities, such as transmission lines, substations, railroad lines, bus loading or waiting platforms, dams, water treatment plants, including water filtration and storage facilities, fire stations, and other similar public service uses and buildings, and also such other buildings and structures, as are used by utility and sanitary districts in the performance of services in which they are authorized to engage." *See* Zoning Ordinance §5.10.02(D), 5.11.02[(H)],[7] 5.12.02(I). In apparent recognition of this dilemma, two different reasons were offered at the MPC and BZA hearings as to why the Development Plan could still be approved, despite this obstacle. The argument at MPC was that the sewage treatment plant could be considered an "accessory use." An accessory use is defined in the zoning ordinances as "[a] subordinate use customarily incidental to and located on the same lot with the main use." Zoning Ordinance §2.20. A sewage treatment plant is clearly not an accessory use.

At the BZA, the new rationale for approval was subsection G of Zoning Ordinance §5.13.02: "Other uses, deemed compatible with the proposed development by the planning commission, including home occupations subject to section 4.90, 'Home occupations.'" Subsection G is referred to as the "catch-all" provision. Chairperson [Robert] Thompson expressed his disapproval with this rationale, and the Court would be hard-pressed to explain the reason why it [the rationale] fails better than Mr. Thompson did at the hearing. When a statute or ordinance is clear and unambiguous, it should be interpreted according to its plain meaning and its normal and accepted use, "without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is clear, "we apply the plain meaning without complicating the task. . . . Our obligation is simply to enforce the written language." *Lind v. Beaman Dodge*, 356 S.W.3d 889, 895 (Tenn. 2011). Finally, when interpreting statutes or ordinances, Courts are to follow the canon of construction [*expressio*] *unius est exclusio*[] *alterius*, "which holds that the expression of one thing implies the exclusion of others . . . ." *Rich v. Tenn. Bd. of Medical Examiners*, 350 S.W.3d 919,

---

[7] According to the current version of the Zoning Ordinance in the record, the applicable subsection is § 5.11.02.H. The trial court inadvertently cited to subsection § 5.11.02.D, which is noted in the version before us as having been "deleted" in 1971. The text of § 5.11.02.H is as noted by the trial court.

927 (Tenn. 2011). This was Mr. Thompson's concern, and it was valid. To allow a public utility in a PR zone would be contrary to the plain language of the ordinance. To allow the catch-all provision of the ordinance to permit a public utility when it is specifically excluded would defeat the entire point of the zoning ordinances. Under this logic, anything goes— even if it is contrary to the plain language of the ordinance—so long as the planning commission deems it compatible. This is simply incompatible with the well-established rules of statutory construction.

In short, the BZA approved a Development Plan that is in violation of the zoning ordinances. The decision of the BZA is reversed.

Upon careful review, we agree with the trial court.

As NCA notes, application of the statutory interpretation maxim of *expressio unius est exclusio alterius* does not require a preliminary finding of ambiguity in the ordinance because it is based on the text of the ordinance itself, including language that may be notably lacking. *See In re Rader Bonding Co.*, 592 S.W.3d 852, 862 (Tenn. 2019) (applying "the Latin maxim of '*expressio unius est exclusio alterius*'" in interpreting a statute without a preliminary finding of ambiguity). When invoking this maxim, the trial court in the instant action cited our Supreme Court's decision in *Rich*, 350 S.W.3d at 927, which required interpretation of a statute governing procedures before a medical review board. In *Rich*, the High Court explained:

The language of the statute does not support the construction urged by the Board. <u>The statute's language is clear and unambiguous.</u> According to its plain terms, we construe it to mean what it says—that for purposes of any action taken based upon a subsection where the standard of care is an issue, "the board must . . . articulate what the standard of care is in its deliberations." Tenn. Code Ann. § 63-6-214(g). The statute specifies only one exception to this requirement—"admission or other testimony by any respondent or such respondent's agent to the effect that the standard of care was violated." *Id.* Here, [t]he standard of care was an issue and Dr. Rich did not admit or testify that he ever violated the standard of care. <u>Applying the canon of construction "expressio unius est exclusio alterius," which holds that the expression of one thing implies the exclusion of others, we infer that had the legislature intended to allow the additional exception asserted by the Board, it would have included specific language to that effect</u>. *See Amos v. Metro. Gov't of Nashville & Davidson Cnty.,* 259 S.W.3d 705, 715 (Tenn. 2008).

*Rich*, 350 S.W.3d at 927 (emphasis added).

Likewise, in the case at bar, the trial court examined the ordinance for the list of permitted uses in the PR zone as compared to the permitted uses in other residential zones within the same article (Article 5) of the ordinance. Without finding ambiguity in the plain language of the ordinance, the trial court applied the maxim of *expressio unius est exclusio alterius* to determine that the absence of public utilities as a permitted use in the PR zone when such were expressly permitted in other residential zones indicated that public utilities had been expressly excluded from the PR zone. We discern no error in the trial court's application of the maxim to the plain language of the ordinance.[8]

Respondents also argue that in reviewing the BZA's decision, the trial court failed to afford proper deference to the rights of the property owner and failed to afford proper deference to local officials' interpretation that an on-site wastewater treatment plant would be a "compatible use" under §§ 5.13.01 and 5.13.02.G. Respondents assert that by ignoring local officials' interpretation, the trial court discounted material evidence that the on-site wastewater treatment plant was permitted under § 5.13.02.G. We disagree.

In its order reversing the BZA's decision, the trial court included the following details from the BZA hearing transcript, in pertinent part, concerning the wastewater treatment plant:

> Robert Thompson, Chairperson of the BZA, expressed concern about the inclusion of the sewer treatment plant:
>
> Yeah, those are questions that I think we definitely need to talk about. Mr. Hale [NCA's counsel] pointed out, and I – as [Vice Chairperson Roy] Braden just mentioned, some of the zoning areas do specifically allow for sewage treatment. PR does not, and so just as a basic matter of construction, like you would construct a statute – the basic rule of construction is enumeration of specific things, exclude things that are not specified. So you have some zones that do specify sewage

---

[8] In support of their argument that the trial court may only apply a canon of statutory construction upon a finding that the language of the statute is ambiguous, Respondents rely on this Court's statement in *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 768 (Tenn. Ct. App. 2015), that "before we apply the canons of statutory construction, we must first analyze whether the exemption [the plaintiff] claims [under the statute] is ambiguous." We find this reliance unavailing because the *Najo Equip.* Court, after finding the statute at issue to be ambiguous, was applying canons of statutory construction specific to tax statutes. *Id.* at 766-69.

treatment plant is okay, some that do not. This one does not.
So that, to me raises a question . . . .

In response, Mr. Green stated that "[t]he reason that the ordinance may not be consistent in its enumeration of permitted uses and non-permitted uses is the ordinance was developed over a number of years, and the planned residential district was added after the other residential districts and may not have considered that." Mr. Braden explained that for PR zones, "everything has to go to the MPC for review. So the regulations, I believe, were written with less specificity because MPC has to review, therefore Knox County engineering and public works has to review, health department has to review, utility districts have to review. Almost across the board, the gamut, everybody reviews it, and it is scrutinized to the degree that you get a better possibly product."

Noting the standard applicable to judicial review of local zoning board decisions under the common law writ of certiorari, Respondents argue that the trial court did not afford what Respondents term the "highest amount of deference" due to local government officials in this instance, such as Mr. Green and Mr. Braden, in making land use decisions. Respondents rely on this Court's decision in *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 575 (Tenn. Ct. App. 2005). In *West*, this Court reversed the trial court's denial of the metropolitan government's motion to dismiss the plaintiff's declaratory judgment action upon determining that the plaintiff had failed to exhaust his administrative remedies before the local board of zoning appeals. *West*, 246 S.W.3d at 581-82. In so determining, this Court emphasized the limited judicial standard of review of a zoning board decision under the common law of certiorari, stating in pertinent part:

There exists a public and judicial policy that favors permitting the community decision-makers closest to the events, who have been given broad powers in the area, to make zoning and land use decisions. Consequently, courts give wide latitude to local officials who are responsible for implementing zoning ordinances, are hesitant to interfere with zoning decisions, and will refrain from substituting their judgments for that of the local governmental officials. *Lafferty* [*v. City of Winchester*]*,* 46 S.W.3d [752,] 758 [(Tenn. Ct. App. 2000)]; *Hoover, Inc.* [v, *Metro. Bd. of Zoning Appeals of Davidson Cty.*]*,* 955 S.W.2d [52,] 54 [(Tenn. Ct. App. 1997)]; *Whittemore v. Brentwood Planning Comm'n.,* 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992).

*West*, 246 S.W.3d at 575.

However, Respondents' argument in this regard, and as it relates to deference to the property owner, conflates local zoning and land use decisions with interpretation of the plain language of a zoning ordinance. Although courts "will refrain from substituting their judgments for that of the local government officials," *id.*, because interpretation of an ordinance is a question of law, courts must review the interpretation of ordinances *de novo*, *see City of Cleveland v. Wade*, 206 S.W.3d 51, 56 (Tenn. Ct. App. 2006) ("The interpretation of an ordinance is a question of law."). Mr. Green's and Mr. Braden's speculation as to why the ordinance evolved as it did cannot be allowed to impact the trial court's, and in turn this Court's, interpretation of the plain language of the ordinance.

Subsection 5.13.02.G of the Zoning Ordinance provides for "[o]ther uses, deemed compatible with the proposed development by the planning commission, including home occupations subject to section 4.90, "Home occupations." A "home occupation," pursuant to § 4.90.01, is "a gainful occupation conducted in a dwelling unit and complying with" various listed minimum requirements. Section 5.13.01 provides as part of a "[g]eneral description" that "[t]he regulations established in this zone are intended to provide optional methods of land development which encourage more imaginative solutions to environmental design problems." Contrary to Respondents' argument, we find nothing in § 5.13.01 that allows for an "imaginative solution" to override the more specific regulations concerning permitted uses. As for § 5.13.02.G, which had been described as a "catch-all" provision during the BZA hearing, the trial court found that such a catch-all provision could not be allowed "to permit a public utility when it is specifically excluded" in the zoning ordinance. The trial court determined that the logic that "anything goes—even if it is contrary to the plain language of the ordinance—so long as the planning commission deems it compatible" was "simply incompatible with the well-established rules of statutory construction." We agree.

Likewise, in support of their argument that the trial court should have given greater deference to the property owner when interpreting the Zoning Ordinance, Respondents rely on our Supreme Court's decision in *Ready Mix, LLC v. Jefferson Cty.*, 380 S.W.3d 52, 63 (Tenn. 2012), for the proposition that "[b]ecause zoning laws are in derogation of the common law and operate to deprive a property owner of a use of land that would otherwise be lawful, such laws are to be strictly construed in favor of the property owner." However, in *Ready Mix*, the High Court also explained that this proposition comes into play when a zoning law is found to be ambiguous. *See id.* (determining that because the statute at issue in *Ready Mix* "create[d] an exception to allow an otherwise invalid use of land," "any ambiguity regarding the statute's applicability" would actually "be construed against the owner of the land"). Having determined in the instant action that the trial court properly did not find the ordinance setting forth permissible uses in a PR zone to be ambiguous, we further determine Respondents' argument concerning deference to property owners to be unavailing.

Finally, Respondents essentially argue that because the MPC staff, the MPC, and the BZA all concluded that the on-site wastewater treatment plant was a "compatible use," "there was material evidence that the sewer plant is an acceptable use within the [PR] zone." Respondents are confusing the material evidence standard with the standard for interpretation of ordinances. Moreover, "[b]ecause the sufficiency of the material evidence in a common law writ of certiorari proceeding is a question of law, the courts must review the record de novo without presuming that the findings are correct." *Williams v. Epperson*, 607 S.W.3d 289, 296 (Tenn. Ct. App. 2020) (quoting *Kaplow v. City of Gatlinburg Bd. of Adjustments & Appeals*, No. E2014-00347-COA-R3-CV, 2015 WL 3964212, at *4 (Tenn. Ct. App. June 30, 2015)). In this case, the opinions of local officials do not constitute "material evidence" that a statute should be interpreted in a particular fashion. If this were the case, *de novo* judicial review of an administrative board's interpretation of an ordinance would be meaningless. We determine that the trial court properly conducted a *de novo* review of the plain language of the ordinance and did not fail to give proper deference to local officials' views on the matter.

VI. Knox County's Authority to Regulate Placement of Wastewater Treatment Plant

Respondents further contend that Knox County does not have the authority to regulate placement of a wastewater treatment plant by First Utility, operating as a quasi-governmental utility company, through operation of the Zoning Ordinance. Respondents argue that such authority is not specifically provided by statute and that because a utility company has separately vested abilities to condemn property and establish land use, it is not subject to the Zoning Ordinance in its placement of facilities. NCA contends that Post Oak waived its argument concerning Knox County's authority to regulate First Utility's placement of a wastewater treatment plant by failing to raise it before the administrative bodies and the trial court. Upon thorough review of the record and applicable authorities, we determine that Post Oak has waived this issue on appeal by failing to properly raise it before the BZA and the trial court.

We note that the principal appellate brief in this matter was filed by Post Oak with Knox County and the BZA later joining in the brief via a one-page notice filed with this Court. Post Oak subsequently filed a reply brief, *inter alia*, opposing NCA's waiver issue concerning the BZA's authority to regulate placement of a wastewater treatment plant. Knox County and the BZA did not file any notice concerning Post Oak's reply brief. Although, as NCA notes, we are presented with the unusual situation of Knox County's having apparently joined in Post Oak's argument against the county's regulation authority, we agree with NCA that as a threshold question, we must review whether Post Oak raised this issue before the trial court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) (explaining that this Court is one "of appeals and errors,"

- 25 -

and that "we are limited in authority to the adjudication of issues that are presented and decided in the trial courts.").

In support of their assertion that Post Oak raised this issue before the administrative bodies, Respondents cite two specific instances in the record. One is an MPC commissioner's statement made during the September 2018 hearing that it was his understanding that "[w]hen a utility comes in and says the people in this area need water or the people in this area need sewer, the utility districts don't have to ask our permission." The second was a statement made in Post Oak's November 2018 pre-hearing letter to the BZA that "[a]s a quasi-public entity, First Utility District is vested statutory condemnation authority to perform its utility operations; therefore, it is not subject to the reviews of the Planning Department." Respondents then assert that "based on the administrative record by itself, waiver is not applicable to the utility regulation issue regardless of whether this issue was discussed in NCA's appeal before the trial court." We disagree.

The BZA transcript demonstrates that Post Oak argued before the BZA that its placement of an on-site wastewater treatment plant was permitted by the Zoning Ordinance in a PR zone, specifically as a "compatible use" under a combined reading of §§ 5.13.01 and 5.13.02.G. *See Cothron v. Scott*, 446 S.W.2d 533, 535-36 (Tenn. Ct. App. 1969) ("The rule is well established that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions . . . ." (quoting 31 C.J.S. Estoppel § 117, p. 623)). Assuming, *arguendo*, that this argument was presented as an alternative to an argument that the BZA had no authority over placement of the wastewater treatment plant, rather than a contradiction, we also find no indication in the BZA transcript that Post Oak maintained a position that Knox County did not have the authority to regulate placement of public utilities in residential zones. As to Respondents' citation to the MPC commissioner's statement during the September 2018 MPC hearing, we determine this reference to be unavailing because the statement did not originate with Post Oak and because NCA's appeal to the BZA was a *de novo* proceeding.

Moreover, as Respondents essentially concede, the issue of Knox County's authority to regulate placement of the wastewater treatment plant was not raised before the trial court. Post Oak did not raise the issue in its answer to the petition for writ of certiorari, its answer to the amended petition, or any other pleading before the trial court. Importantly, Post Oak also made no mention of this issue in its motion to alter or amend, despite the trial court's having entered a final judgment without any indication that the trial court perceived Knox County's authority over placement of the wastewater treatment plant as an issue before the court. The trial court's order denying the cross-motions to alter or amend, incorporating the transcript of the court's ruling, also

demonstrates that the court entered its final judgment without any objection from Post Oak that an issue regarding Knox County's authority had not been decided. Accordingly, we determine that Post Oak waived this issue by failing to properly raise it before the BZA and the trial court.[9] *See Dorrier*, 537 S.W.2d at 890.

## VII. NCA's Remaining Issues

NCA has raised issues concerning whether the trial court's reversal of the BZA's decision should be affirmed based on one or both of two alternative grounds that the trial court found had not been proven. *See Cont'l Cas. Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn. 1986) ("[T]his Court will affirm a decree correct in result, but rendered upon different, incomplete, or erroneous grounds."). First, NCA argues that the trial court erred by declining to find that the BZA's approval of Post Oak's use-on-review application for the Development Plan was illegal based on its purported inconsistencies with and contradiction to the provisions of the Growth Policy Plan. Second, NCA argues that the trial court erred by declining to find that the BZA's decision was arbitrary because some BZA members' votes allegedly did not comport with their deliberative statements made during the November 2018 hearing. Having determined that the trial court did not err in reversing the BZA's decision based on its finding that the inclusion of the on-site wastewater treatment plant in the Development Plan was a violation of the Zoning Ordinance, we further determine that NCA's issues concerning alternative grounds for affirming the trial court's decision are pretermitted as moot.

## VIII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court reversing the BZA's decision. We remand this case to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellants, Post Oak Bend, LLC; Knox County, Tennessee; and the Knox County Board of Zoning Appeals.

---

[9] In support of their argument against waiver, Respondents also assert that "[i]f 'any possible reason' exists justifying the BZA's approval, the approval must be upheld," relying on our Supreme Court's decision in *McCallen v. Memphis*, 786 S.W.2d 633, 641 (Tenn. 1990). However, in *McCallen*, the High Court was referencing "[t]he restricted role of the courts in reviewing the validity of a zoning ordinance or other legislative acts of a municipality" when it quoted *Fallin v. Knox Cty. Bd. of Comm'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983), with approval, stating: "The ultimate consideration in *Fallin* was 'whether any possible reason can be conceived to justify the instant ordinance.'" *McCallen*, 786 S.W.2d at 640. The *McCallen* Court went on to clarify the standard of review under common law writ of certiorari without any reference to allowing consideration of an issue deemed waived. *Id.* Respondents' reliance on *McCallen* in this regard is without merit.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE